FILED'10 APR 27 16:41 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

BRUCE HEMPEL, JR.,

       Petitioner,

    v.

J.E. THOMAS,

       Respondent.

Civil No. 09-1315-MO

OPINION AND ORDER

Bruce Hempel
34311-086
FCI Sheridan
P.O. Box 5000
Sheridan, OR 97378

    Attorney for Petitioner

Kent S. Robinson
Acting United States Attorney
Suzanne A. Bratis
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902

    Attorneys for Respondent

1 - OPINION AND ORDER

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2241 in which he seeks to challenge the result of a prison disciplinary hearing causing him to forfeit 27 days of good time credit. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) is denied.

## BACKGROUND

Petitioner is currently serving a 100-month sentence at FCI-Sheridan stemming from his conviction in the Western District of Washington for manufacturing methamphetamine in violation of 21 U.S.C. § 846. On February 21, 2008, staff members at FCI-Sheridan "received information that inmate Hempel ha[d] been showing other inmates how to make a methamphetamine lab." Respondent's Att. 3, p. 17. As a result, Officer Urban searched petitioner's cell and "found what appears to be paperwork pertaining to the manufacture of drugs . . . ." *Id* at 9, 24.

Special Investigative Services Technician G. Martin investigated the documents found in petitioner's cell and showed them to a pharmacist who opined that "the paperwork was instructions on how to make prohibited substances such as methamphetamine." *Id* at 9, 22. Essentially, the investigation discovered that petitioner was in possession of "recipes" for the manufacture of illegal narcotics. As a result, petitioner was charged with Possession of Narcotic Paraphernalia in violation of

2 - OPINION AND ORDER

Code 113 based on "handwritten and typed instructions as well as diagrams on how to make illegal narcotic type substances such as MDMA, methamphetamine, heroin, and codeine base." *Id* at 17. When petitioner was notified of the charge in an incident report, he admitted that the paperwork was his, but claimed he never showed anyone how to make methamphetamine. *Id* at 10, 18. His case was referred to the Unit Disciplinary Committee ("UDC") for further action.

Petitioner appeared before the UDC on February 27, 2008, and made the following statement: "I research patents. I study chemistry. I showed pictures of my case." *Id* at 10, 17. Due to the severity of the charge, the UDC referred petitioner's case to Discipline Hearing Officer ("DHO") Cortez.

On March 8, 2008, petitioner, accompanied by his staff representative, appeared before DHO Cortez. Petitioner made a statement, but called no witnesses and, aside from his statement, did not submit any of his own evidence. Petitioner's statement was as follows: "I study patents, I have chemistry textbooks. I study chemistry. It helps make the clock go by faster. Some of it was from patent stuff and I was not showing anyone this stuff or instructing anyone how to use it." *Id* at 8.

3 - OPINION AND ORDER

DHO Cortez found petitioner guilty of the charged conduct.[1] In his decision, DHO Cortez noted the following:

> Introduction, Possession or Use of Narcotics, Drugs, Marijuana, or Narcotic Paraphernalia in a correctional institution or facility is prohibited by Federal Law and will not be tolerated. The potential to obtain the items needed to create such items while housed at a minimum security facility is high. Should inmate Hempel be able to create these items, the items in and of themselves are highly sought after in a correctional setting and have in the past created potentially violent confrontations between inmates who vie for the items and/or staff who have to respond to such incidents. Additionally, the potential to instruct others on how to create these items puts society in harm from the insidious effects of narcotics.

*Id* at 10. As a result of petitioner's conviction for possessing paraphernalia related to narcotics, DHO Cortez disallowed 27 days of good time credit, imposed 30 days of disciplinary segregation (suspended), 90 days loss of telephone privileges, and ordered that the contraband's confiscation be made permanent. *Id*.

In his Petition for Writ of Habeas Corpus, petitioner alleges that his Code 113 conviction violates his right to free speech under the First Amendment, as well as his Fifth Amendment right to due process of law. He seeks the restoration of his 27 days lost good time credits.

///

///

---

[1] It does not appear that petitioner was ultimately charged with or convicted of showing any other inmate how to manufacture methamphetamine.

4 - OPINION AND ORDER

**DISCUSSION**

I. **Due Process**

Petitioner attempts to couch his due process claim in terms of procedural due process. Specifically, he faults DHO Cortez for allegedly refusing to consider petitioner's "evidence" which consisted of his argument that the documents collected from his cell were provided by the Bureau of Prisons and other governmental agencies to him, as a prisoner, and therefore could not constitute drug paraphernalia. Because DHO Cortez did not prevent plaintiff from presenting any evidence, the court views this due process claim as a substantive one challenging the sufficiency of the evidence to support his conviction.

In *Superintendent v. Hill*, 472 U.S. 445 (1985), the Supreme Court addressed the kind of evidence required to satisfy due process considerations in a prison disciplinary hearing:

> [R]ecognizing that due process requires some evidentiary basis for a decision to revoke good time credits will not impose significant new burdens on proceedings within the prison. Nor does it imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review.
>
> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the

> record that could support the conclusion reached by the disciplinary board.

*Id* at 455-56 (internal citations omitted).

Petitioner does not dispute that the documents underlying his conviction belonged to him, or that they could ultimately be utilized by a person to manufacture narcotics. Instead, he argues that his paperwork, by itself, does not constitute drug paraphernalia within the meaning of Code 113 at all. He asserts that this is especially true when the information at issue has been provided to him by the prison, the prison law library, the U.S. Patent Office, the Public Defender's Office, the Drug Enforcement Agency, and Ninth Circuit web logs.

Code 113 prohibits: "Possession of any narcotics, marijuana, or related paraphernalia not prescribed for the individual by the medical staff." 28 C.F.R. § 541.13, Table 3, <u>Prohibited Acts and Disciplinary Severity Scale</u>. The term "related paraphernalia" is not defined, and the DHO in petitioner's case interpreted it to include the narcotic recipes at issue in this case. "An agency's interpretation of the meaning of its own regulations is entitled to deference unless plainly erroneous or inconsistent with the regulation." *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 672 (2007).

Petitioner makes much of the fact that many of the documents confiscated from his cell were actually provided to him by various

6 - OPINION AND ORDER

governmental agencies. But among the documents seized from petitioner's possession were handwritten instructions explaining how to manufacture illegal narcotics. Respondent's Att. 3, pp. 13-14. In this regard, it appears petitioner was developing recipes which could be used to make narcotics, as well as compiling a list of places to obtain the ingredients. Petitioner does not dispute that he possessed these documents, and signed a confiscation form admitting the paperwork was his. *Id* at 14.

According to Webster's Dictionary, paraphernalia include "[t]he articles used in a given activity." Wester's II New Riverside University Dictionary 853 (1988). As applied to federal criminal cases, drug paraphernalia can be made up of any "product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting . . . producing, processing, [or] preparing . . . a controlled substance. . . ." 21 U.S.C. § 863(d). It is difficult to conclude that an instructional recipe and list of locations where an individual is able to obtain the needed ingredients do not constitute articles or materials used in the activity of manufacturing narcotics. The DHO's interpretation of "paraphernalia" in the prison context was not plainly erroneous, nor was it inconsistent with the regulation at issue. As a result, there was some evidence that petitioner was in possession of drug paraphernalia sufficient to satisfy due process.
///

7 - OPINION AND ORDER

## II. First Amendment

Petitioner also asserts that his conviction for possessing drug paraphernalia violates his First Amendment right to freedom of speech. Prison inmates retain those First Amendment rights that are not inconsistent with their status as prisoners or the legitimate penological objectives of the institutions in which they are confined. *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125 (1977) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Since courts are ill-equipped to deal with prison administration and reform, courts afford deference to the policies of prison authorities in evaluating prisoners' claims. *Turner v. Safley*, 482 U.S. 78 at 84-85 (1987).

In determining whether a prison regulation is reasonably related to legitimate penological interests, the court considers: (1) whether there is a valid, rational connection between the regulation and a legitimate government objective which operates in a neutral fashion without regard to the content of the expression; (2) whether there are alternative means of exercising the right at issue that remain open to the prisoner; (3) the impact that the accommodation of the asserted constitutional right will have on prison staff and resources; and (4) the absence of ready alternatives that fully accommodate the prisoner's rights at de minimis costs to valid penological interests. *Turner*, 482 U.S. at 89-90; *Mauro v. Arpaio*, 188 F.3d 1054, 1058-59 (9th Cir. 1999);

8 - OPINION AND ORDER

*Walker v. Sumner*, 917 F.2d 382, 385(9th. Cir 1990). If there is a common sense connection between the regulation and the objective the regulation seeks to further, it is presumed legitimate and neutral. *Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999). Put simply, the policy cannot be "so remote as to render [it] arbitrary or irrational." *Turner*, 482 U.S. at 89-90.

In this case, petitioner challenges the regulation prohibiting drug paraphernalia within the BOP because, as interpreted, it prevents him from developing and maintaining narcotics recipes. It is beyond question that the BOP has a legitimate interest in maintaining drug-free prisons, and preventing the kind of unrest which could result from having narcotics introduced into the prison, or in having inmates spar over who has access to the narcotic recipes. The BOP also has an interest in petitioner's rehabilitation from his crime of manufacturing methamphetamine. *Pell v. Procunier*, 417 U.S. 817, 823 (1974). These interests are not served by allowing petitioner to develop narcotics recipes during his time in custody.

Although the BOP is specifically banning narcotics recipes through the use of Code 113, this is a content-neutral application because "[i]n the prison context, regulations that apply to specific types of content due to specific inherent risks or harms are considered to be content neutral." *Bahrampour v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004) (citing *Thornburgh v. Abbott*, 490

9 - OPINION AND ORDER

U.S. 401, 415-16 (1989). The application of Code 113 to petitioner's case addresses the specific harms identified above.

The next consideration is whether there are alternative means for an inmate to exercise his First Amendment right. Petitioner does not have a right to develop narcotics recipes within the BOP, but he may still exercise his First Amendment right to continue academic pursuits within the institution. 28 C.F.R. § 544.20-21. At his hearing in front of the DHO, petitioner claimed that he enjoyed studying patents and chemistry. Respondent's Att. 3, p. 8. The BOP policies expressly allow him to possess educational materials. Respondent's Att. 5, p. 6. In fact, the record shows that while some of petitioner's materials were confiscated, he was allowed to "keep other chemistry books." Respondent's Att. 3, p. 7. Consequently, the court finds that there are alternative means for petitioner to exercise his First Amendment right.

*Turner's* third factor addresses the impact that accommodation of the asserted right will have on the prison staff and resources. Here, allowing petitioner to develop instructions for manufacturing narcotics could easily compromise safety within the institution, placing prison staff in harm's way. Whether petitioner's narcotic instructions might lead to the introduction of illegal substances into the prison, or whether these instructions are, by themselves, highly coveted by other inmates, prison unrest could result and jeopardize the safety of the staff.

10 - OPINION AND ORDER

Finally, *Turner* calls on the court to determine whether there is "some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological purpose." *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003). Petitioner has not offered, and the court cannot conceive, any alternative solution that fully accommodates petitioner's asserted right while not putting a significant burden on the valid penological interests identified in this Opinion. As a result, petitioner's First Amendment challenge fails.

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) is DENIED.

IT IS SO ORDERED.

DATED this 27 day of April, 2010.

_____
Michael W. Mosman
United States District Judge

11 - OPINION AND ORDER